IN THE UNITED STATES DISTRICT COURT

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

2006 JUL -6  AM 8: 23

CLERK _____
SO. DIST. OF GA.

BENNIE JAMES WALKER,        )
                           )
        Petitioner,        )
                           )
    v.                     )        CV 106-027
                           )
ANTHONY WASHINGTON, Warden, )
                           )
        Respondent.        )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner brought the captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is before the Court on Respondent's motion to dismiss the petition as untimely. (Doc. no. 9.) Petitioner opposes the motion. (Doc. nos. 12 & 13.) For the reasons explained below, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss (doc. no. 9) be **DENIED**. Nevertheless, the Court also **REPORTS** and **RECOMMENDS** that the petition be **DENIED** on the merits and that this case be **CLOSED**.

### I. BACKGROUND

On October 28, 1999, a grand jury in Burke County, Georgia, returned a two-count indictment charging Petitioner with aggravated child molestation and incest. Resp't Ex. 7, pp. 55-57. On June 7, 2001, Petitioner appeared with counsel in the Superior Court of Burke County and entered a negotiated plea of guilty to the offense of child molestation. Id. at 66-70; see also Resp't Ex. 8, p. 3. The court accepted Petitioner's guilty plea and sentenced him to 20 years of imprisonment. Resp't Ex. 7, p. 66; Resp't Ex. 8, p. 13. Petitioner did not file a direct appeal.

However, on June 28, 2001, Petitioner filed a "Motion for Modification of Sentence" in the court of conviction. Resp't Ex. 7, pp. 72-73. Petitioner argued that the sentence was "too harsh" given Plaintiff's disability and medical needs. Id. The court conducted a hearing on the motion on May 14, 2002, and entered an order denying the motion on June 5, 2002. Id. at 84, 92; but see id. at 104 (order denying motion to modify sentence dated June 12, 2002).

Petitioner also filed an application for sentence review pursuant to O.C.G.A. § 17-10-6 on June 28, 2001. Id. at 75. The sentence review panel affirmed the sentence on August 2, 2002. Id. at 108. Also, on April 2, 2002, Petitioner began filing several *pro se* motions in the court of conviction, including motions to withdraw his guilty plea, for new trial and for an out-of-time appeal. See, e.g., id. at 79. The record does not indicate if or when Petitioner received a ruling on any of these motions.

Petitioner also filed a state habeas corpus petition on October 23, 2003. Resp.'t Ex. 1. Therein, Petitioner alleged: (1) but for the ineffective assistance of plea counsel, he "would have went [sic] to trial;" (2) his prosecution was "malicious;" (3) Petitioner was forced to post bond twice, which amounted to "double jeopardy;" (4) Petitoner's plea was "coerced;" (5) the indictment was invalid because it was not signed as a "true bill;" and (6) DNA evidence against Petitioner (a paternity test) was obtained illegally, and counsel should have filed a motion to suppress. Id. at 4, 6-7.

On December 14, 2004, Petitioner filed his "First Amendment to Application for Writ of Habeas Corpus," in which he argued: (1) evidence was obtained in violation of his Fourth and Fifth Amendment rights; (2) his confession was coerced; (3) his arrest was unlawful; (4) the prosecution withheld exculpatory evidence; (5) his plea was invalid and coerced; (6) the indictment was not a "true bill;" and (7) Petitioner was denied the right to appeal. Resp.'t Ex.

2

3, pp. 1-3.

On March 7, 2005, Petitioner filed an "Amended Complaint for Habeas Corpus," in which he argued: (1) counsel was ineffective for not arguing that the indictment was "faulty;" (2) counsel failed to properly investigate and prepare his case; (3) his plea lacked sufficient factual basis; (4) the court of conviction failed to inform Petitioner of the elements of the crimes charged; (5) the court of conviction failed to inform Petitioner of his rights; and (6) Petitioner was subjected to double jeopardy. Resp.'t Ex. 2, pp. 1-9.

After two evidentiary hearings, conducted on February 24 and April 25, 2005, respectively, the state habeas court denied Petitioner relief in an order dated May 17, 2005. See Resp't Exs. 4, 7-8. Upon denying the petition, the state habeas court informed Petitioner that he could appeal by filing an application for a certificate of probable cause to appeal ("ACPC") with the Clerk of the Georgia Supreme Court within thirty (30) days. Resp't Ex. 4, p. 15. Rather than filing a timely ACPC to the Georgia Supreme Court in accord with O.C.G.A. § 9-14-52(b) and the state habeas court's instructions, Petitioner filed an application for discretionary appeal with the Georgia Court of Appeals on June 17, 2005, which was dismissed as untimely on July 8, 2005. Resp't Ex. 5. Petitioner also filed a motion for reconsideration, which the Georgia Court of Appeals denied on August 9, 2005.

Petitioner then executed the instant federal petition for writ of habeas corpus on February 10, 2006. (Doc. no. 1, p. 8.) Petitioner's arguments can be summed up as follows: (1) his plea was not knowing, voluntary, or intelligent because counsel led him to believe he would receive a probated sentence; (2) he was incompetent to enter a plea, and both counsel and the court of conviction failed to address the issue; (3) the Georgia Court of Appeals erroneously dismissed his application for discretionary appeal; and (4) the DNA evidence

against him was obtained illegally. (Id. at 5-6.)  In Petitioner's brief in support his petition, he further contends:  (1) his counsel refused to file a motion to withdraw his guilty plea; (2) Petitioner did not realize his plea agreement contained a waiver of his right to appeal; (3) counsel failed to follow his instructions to file an appeal; (4) during the plea hearing, Petitioner was incompetent because he was under the influence of Darvocet; (5) Petitioner was denied a copy of his sentencing transcript; (6) there was no factual basis for his plea; and (7) the DNA evidence against him was unreliable and obtained illegally.[1]  (Doc. no. 7, pp. 1-24.)

On the other hand, Respondent urges that the instant petition is untimely because it was not filed within one year of the date upon which Petitioner's conviction became final as required by 28 U.S.C. § 2244(d)(1)(A).  (See doc. no. 10.)  Respondent also urges that all of Petitioner's claims are either procedurally barred or fail on the merits.  (See doc. no. 8.)  The Court resolves the matter as follows.

## II.  DISCUSSION

**A.      The Petition is Timely.**

Effective April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, amended the statute governing habeas corpus petitions for state prisoners seeking relief in the federal courts.  In pertinent part, 28

---

[1] The Court has not provided an exhaustive list of Petitioner's claims.  The Court is aware of its obligation to consider all of Petitioner's claims. Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992) (en banc). Nevertheless, the Court has no duty to address each of Petitioner's dubious claims in explicit detail--it suffices to say that those claims not explicitly declaimed or discussed herein have been considered and found to be devoid of merit. See, e.g., United States v. Northside Realty Assoc., Inc., 474 F.2d 1164, 1170 n.5 (5th Cir. 1972) ("Courts need not indulge in exegetics, or parse or declaim every fact and each nuance or hypothesis . . . failure to mention each and every specific item . . . in no way indicates that they were not considered.") (citations omitted); cf. White v. United States, No. 05-14470, 2006 WL 887743, at *2 (11th Cir. Apr. 6, 2006) (quoting Broadwater v. United States, 292 F.3d 1302, 1303 (11th Cir.2002)) (Clisby does not forbid summary denial of meritless claims); Miller v. United States, No. 04-13332, 131 Fed. Appx. 161, 163 (11th Cir. Apr. 29, 2005) (Clisby does not require district court "to comment on all of the evidence presented in support of [a petitioner's] claim").

U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection

Under 28 U.S.C. § 2244(d)(1)(A), quoted above, a judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review." As Petitioner has outlined no reason to suppose that §§ 2244(d)(1)(B), (C), or (D) apply to the instant case, the instant case is governed by § 2244(d)(1)(A). Because Petitioner did not file a direct appeal, his conviction became "final" when the 30-day period to appeal provided for by O.C.G.A. § 5-6-38(a) expired. As Petitioner's conviction and sentence was rendered on June 7, 2001, his convictions became final on or about July 9, 2001. It is at this point that Petitioner's one-year statute of limitations began to run. Coates v. Byrd, 211 F.3d 1225, 1226 (11th Cir. 2000) (per curiam).

As Petitioner did not execute the instant federal petition until February 10, 2006, the petition is untimely absent some basis to toll the statutory period. A prisoner may stop the

running of his AEDPA clock while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see also Jones v. Nagle, 349 F.3d 1305, 1307 (11th Cir. 2003). Here, Plaintiff pursued a motion to modify his sentence, an application for sentence review, and several *pro se* motions, as well as a state petition for a writ of habeas corpus. Accordingly, the Court must assess whether these post-conviction filings triggered § 2244(d)(2).

First, Petitioner's application for sentence review pursuant to O.C.G.A. § 17-10-6 neither affected the finality of his conviction nor triggered § 2244(d)(2)'s tolling provision. Bridges v. Johnson, 284 F.3d 1201, 1202-04 (11th Cir. 2002). Petitioner's "Motion for Modification of Sentence," presumably brought pursuant to O.C.G.A. § 17-10-1(f), also did not trigger § 2244(d)(2). Post-conviction motions which do not challenge the legality of the prisoner's underlying conviction or sentence do not trigger § 2244(d)(2). Id. at 1203; see also Walkowiak v. Haines, 272 F.3d 234, 237 (4th Cir. 2001) (motion for sentence reduction which did not challenge "the legality of the original judgment" did not trigger § 2244(d)(2)). Simply put, Petitioner's application for sentence review and motion to modify his sentence were not "application[s] for State post-conviction or other collateral review *with respect to the pertinent judgment or claim*." 28 U.S.C. § 2244(d)(2)(emphasis added).

Next, the Court considers Petitioner's various *pro se* motions in the court of conviction. Starting April 2, 2002, Petitioner began to relentlessly bombard the court of conviction with paper, including motions for an out-of-time appeal, for a "new trial," "for discovery," "for funds for transcript," "for an order allowing the Defendant to file a motion to withdraw from [sic] guilty plea," "to withdraw defendant," and a petition for writ of mandamus. See generally Resp't Ex. 7. In order to trigger § 2244(d)(2)'s tolling provision, a motion must be "properly

6

filed." The Supreme Court has explained:

> [A]n application is "*properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

Artuz v. Bennett, 531 U.S. 4, 8 (2000).

Thus, an application is not "properly filed" if it is untimely, Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005), or if it is filed in "a court lacking jurisdiction." Artuz, 531 U.S. at 9. More generally, § 2244(d)(2) does not allow prisoners to toll the statutory period "in perpetuity" by continually bringing "creative, unrecognized motions" or by endlessly "availing themselves of a state court's general motion practice." Adeline v. Stinson, 206 F.3d 249, 252-53 (2d Cir. 2000); see also Sibley v. Culliver, 377 F.3d 1196, 1201 (11th Cir. 2004) (§ 2244(d)(2) not "triggered simply because a prisoner mailed nonsense to a state court").

Here, by the time Petitioner had begun filing his various motions in the court of conviction, the state court no longer had jurisdiction to entertain a challenge to Petitioner's guilty plea. In Georgia, "[t]he general rule is that after expiration of the term at which the judgment was entered a court cannot set aside or alter its final judgment unless the proceeding for that purpose was begun during the term." Golden v. State, 273 Ga. App. 617, __, 615 S.E.2d 769, 770 (2005)(quoting Moore v. State, 116 Ga. App. 774, 158 S.E.2d 926 (1967)). This jurisdictional rule is "firmly established and regularly followed" in Georgia; consequently, untimely attempts to withdraw a guilty plea in the court of conviction are not "properly filed" applications for post-conviction relief under § 2244(d)(2). Colbert v. Head, No. 05-10515, 146 Fed. Appx. 340, 345 (11th Cir. Aug. 16, 2005).

In Golden, the defendant filed a "Motion for Dismissal and to Reinstate All Motions," a "Motion to Invoke Dismissal of Illegal Guilty Plea," a "Motion for Dismissal," and an "Extraordinary Motion to Withdraw Guilty Plea or New Trial"--all after the term of court in which he was convicted had expired.  273 Ga. App. at __, 615 S.E.2d at 770.  The Georgia Court of Appeals explained that the court of conviction did not have jurisdiction over the motions and that "the only means available to Golden to withdraw his guilty plea [was] through habeas corpus proceedings."  Id. (citing Downs v. State, 270 Ga. 310, 509 S.E.2d 40 (1998)).  As Golden exemplifies, a Georgia prisoner may not evade this jurisdictional rule by affixing artful labels to motions which substantively attack his guilty plea.[2]  Also of import, the Golden court noted that Golden could not challenge his guilty plea in a motion for "new trial" "because '[o]ne who has entered a plea of guilty cannot move for a new trial, as there was no trial.'"  273 Ga. App. at __, 615 S.E.2d at 770 (quoting Davis v. State, 274 Ga. 865, 866, 561 S.E.2d 119, 120 (2002)).  Thus, the majority of Petitioner's *pro se* filings in the court of conviction were not "properly filed" and can have no tolling effect under § 2244(d).

That said, there is at least one exception to this rule:  the court of conviction has jurisdiction to consider a motion for leave to file an out-of-time appeal.  See, e.g., Smith v. State, 268 Ga. App. 748, 749, 602 S.E.2d 839, 840 (2004).  Here, Petitioner filed a motion for leave to file an out-of-time appeal on April 2, 2002--well within the AEDPA period.  Resp't Ex. 7, p. 79.  As there is nothing in the record to indicate otherwise, the Court must assume that the motion is still pending.  Thus, the Court must assess whether a motion for leave to file an out-of-time appeal triggers § 2244(d)(2).

---

[2]See Thompson v. State, 274 Ga. 818, 818, 559 S.E.2d 730, 731 (2002); see also Rubiani v. State, 279 Ga. 299, 299, 612 S.E.2d 798, 799 (2005) (motion to "void the judgment of conviction" properly construed as untimely motion to withdraw guilty plea and dismissed).

Admittedly, the Eleventh Circuit has "not addressed whether a motion seeking a belated appeal tolls an unexpired AEDPA period." Miller v. Crosby, No. 05-15882, 2006 WL 1410032, at *2 (11th Cir. May 23, 2006). Nevertheless, in the related context in which a state court grants a petitioner leave to pursue a belated appeal, several federal courts have held that the time in which the belated appeal is under consideration should be tolled under § 2244(d)(2).[3] Accordingly, the Court determines that Petitioner's pending motion for an out-of-time appeal is a properly filed "application for State post-conviction or other collateral review" which tolls the statutory period under § 2244(d)(2).

In sum, the Court concludes that the instant petition is timely. Nevertheless, for the reasons below, the Court concludes that the petition should be denied on the merits.

**B.      The Petition is Subject to Denial on the Merits.**

**1.      Applicable Standard of Review**

Besides enacting the period of limitations discussed above, the AEDPA also provides the governing standard of review in § 2254 cases. According to 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of

---

[3] See Allen v. Mitchell, 276 F.3d 183, 186 (4th Cir. 2001); Melancon v. Kaylo, 259 F.3d 401, 406-07 (5th Cir. 2001); Gibson v. Klinger, 232 F.3d 799, 807 (10th Cir. 2000); Fernandez v. Sternes, 227 F.3d 977, 979-80 (7th Cir. 2000).

the facts in light of the evidence presented in the State court proceeding.

As the Supreme Court has explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States,*" or (2) "*involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.*"

Williams v. Taylor, 529 U.S. 362, 404-05 (2000).

The Eleventh Circuit has further explained the difference between the "contrary to" and

"unreasonable application" clauses in § 2254(d)(1) as follows:

> A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case.
>
> A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. Notably, an "unreasonable application" is an "objectively unreasonable" application.

Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) (internal citations omitted).[4]  In sum,

---

[4]As to the analysis of the "unreasonable application" standard, the Supreme Court has explained:

Stated simply, a federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. The federal habeas court should not transform the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did in the

the writ of habeas corpus may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, § 2254(e)(1) sets a highly deferential standard of review for state court factual determinations. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Fugate v. Head, 261 F.3d 1206, 1215 (11th Cir. 2001) (citations omitted); see also Crawford v. Head, 311 F.3d 1288, 1317 (11th Cir. 2002) (affirming state court factual determination "because there is support for it in the record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Bottoson v. Moore, 234 F.3d 526, 540 (11th Cir. 2000).

### 2.      Exhaustion and Procedural Default Rules Explained

In addition to providing the applicable standard of review in § 2254 cases, the AEDPA also preserves the traditional exhaustion requirement, which requires a district court to dismiss habeas claims that the petitioner has a right to raise, by any available procedure, in state court. 28 U.S.C. § 2254(b)(1)(A) & (c). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by *any* available procedure, the question presented." Id. § 2254(c)(emphasis added). In reference to this requirement, the Supreme Court has held that a state inmate is deemed to

---

habeas petitioner's case.

Williams, 529 U.S. at 409-10; see also Lockyer v. Andrade, 538 U.S. 63, 76 (2003) (finding application of Supreme Court precedent to be unreasonable requires more than an incorrect or erroneous state court decision; it must be "objectively unreasonable").

have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

As the Eleventh Circuit has explained, "[a] state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). The exhaustion requirement applies with equal force to all constitutional claims, including claims of ineffective assistance of counsel. See Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992)("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously."). Furthermore, a petitioner's failure to properly exhaust his claims ripens into a procedural default once state remedies are no longer available. McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005)("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar.").

A federal habeas petitioner can run afoul of the procedural default rule in one of two ways. First, a federal habeas petitioner can improperly attempt to revive an old claim that a state court has previously denied on procedural grounds. When a state court denies a constitutional claim on "adequate and independent" state procedural grounds, the district court is precluded from later reviewing the merits of the claim on collateral attack. Judd, 250 F.3d at 1313.

12

Likewise, a federal habeas petitioner runs afoul of the procedural default rule when he attempts to bring a new claim that would be procedurally barred if raised in state court. In such instances, the petitioner's failure to properly bring the claim in state court has "matured into a procedural default." Smith v. Jones, 256 F.3d 1135, 1139 (11th Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998); see also Harris v. Reed, 489 U.S. 255, 263 n.9 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."). Simply put, if a claim has not been "fairly presented in the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006).

Of particular note in the instant case, in order to properly exhaust state court remedies, a Georgia inmate must file an application for a certificate of probable cause to appeal the denial of his state habeas petition. See Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (per curiam) ("[W]e conclude that Pope has failed to exhaust his state remedies by failing to petition the Georgia Supreme Court for a certificate of probable cause to appeal the denial of his state habeas petition."). Under O.C.G.A. § 9-14-52(b), a Georgia habeas petitioner has 30 days from the entry of the state habeas court's order denying him relief to file an application for a certificate of probable cause to appeal with the Clerk of the Georgia Supreme Court. As the 30-day time limit of § 9-14-52 is jurisdictional, the failure to file a timely ACPC precludes the prisoner from seeking appellate review of his claims in state court. See Fullwood v. Sivley, 271 Ga. 248, 250, 517 S.E.2d 511, 513-14 (1999). Consequently, the failure to timely file an ACPC will procedurally bar the prisoner from bringing his claims in a federal habeas petition.

Pope, 358 F.3d at 854.

Also of note, Georgia law requires state habeas petitioners to raise all available grounds for relief in a first or amended habeas petition. See O.C.G.A. § 9-14-51. Under § 9-14-51, a second or successive Georgia state habeas petition is procedurally barred unless a state habeas judge concludes that the grounds cited in the petition could not have been raised in the original petition. See id. The Eleventh Circuit has held that Georgia's successive petition statute should be enforced by federal courts "unless there is some indication that a state court judge would find the claims in question could not reasonably have been raised in the original or amended petition." Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998).

Of course, the Eleventh Circuit has explained that a procedural default may be excused if certain conditions are met:

> A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default. Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice.

Jones, 436 F.3d at 1304 (internal citations omitted). Cause entails a showing "that some objective factor external to the defense impeded" efforts to comply with the state procedural rule. Coleman v. Thompson, 501 U.S. 722, 753 (1991). A state petitioner may also demonstrate cause to overcome a procedural default by demonstrating that he received constitutionally ineffective assistance of counsel. Turpin v. Todd, 268 Ga. 820, 826, 493 S.E.2d 900, 906 (1997). The narrow fundamental miscarriage of justice exception, on the other hand, encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. Murray v,

14

Carrier, 477 U.S. 478, 496 (1986).

Having explained the exhaustion and procedural default rules, the Court addresses their application to this case.

### 3.    Application to the Instant Case

Given that Petitioner has a motion for an out-of-time appeal pending in state court, it would appear that he has not yet exhausted all available state court procedures. However, the court of conviction's failure to rule on that motion may counsel hesitation in relying upon failure to exhaust as a basis for dismissing the instant petition. See Hollins v. Davis, 941 F.2d 1471, 1475 (11th Cir. 1991) (exhaustion requirement should not be applied "if the state court has unreasonably or without explanation failed to address petitions for relief"); but see Tower v. Phillips, 7 F.3d 206, 209-211 (11th Cir. 1993) (state court's failure to rule on untimely--and thus also procedurally barred--claims in post-conviction motion does not eliminate fact that claims have been defaulted under state law). Of course, it may also be argued that, in bringing a state habeas petition and appealing its denial, Petitioner may be deemed to have adequately exhausted his claims.

Unfortunately, any such argument would fail because Petitioner failed to timely and properly file an ACPC with the Georgia Supreme Court. Furthermore, as Petitioner has already sought habeas relief in state court, he may no longer collaterally attack his convictions in state court. Thus, aside from Petitioner's pending motion for an out-of-time appeal, Petitioner has failed to exhaust state court remedies as to any of his claims and his default has now ripened into a procedural bar.

Simply put, Petitioner cannot be said to have satisfied the exhaustion requirement,

which leaves the Court with the difficult question of whether exhaustion should be excused because of the court of conviction's failure to rule on Petitioner's motion for an out-of-time appeal. The Court need not resolve this question, however, because the related doctrines of exhaustion and procedural default do not prevent the Court from ruling on the merits of the petition if its contentions are indisputably meritless.[5]

### 4.   Merits of Petitioner's Claims

Because Petitioner is attempting to challenge a conviction entered pursuant to a guilty plea, the range of claims he may press in a federal petition is quite limited:

> A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

United States v. Broce, 488 U.S. 563, 569 (1989).

As a general rule, a guilty plea forecloses arguments which do not go to the validity of the plea itself. See Tollett v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense . . . . , he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); see also Martin v. Kemp, 760 F.2d 1244, 1246-47 (11th Cir. 1985) ("A defendant who knowingly and voluntarily enters a plea of guilty

---

[5]See 28 U.S.C. § 2254(b)(2); Granberry v. Greer, 481 U.S. 129, 134-35 (1987) (court may deny unexhausted petition "if it is perfectly clear that the applicant does not raise a colorable federal claim"); see also LeCroy v. Secretary, Florida Dept. of Corr., 421 F.3d 1237, 1261 n.26 (11th Cir. 2005) (court has "option" of denying petition on the merits); Peoples v. Campbell, 377 F.3d 1208, 1243 (11th Cir. 2004) (same); cf. Henry v. Dep't of Corr., 197 F.3d 1361, 1366 n.2 (11th Cir. 1999) (court of appeals should not grant certificate of appealability to review procedural dismissal of a claim if the claim itself is "facially meritless").

waives all nonjurisdictional challenges to his conviction."). "Reviewing federal courts may set aside a state court guilty plea only for failure to satisfy due process." <u>Finch v. Vaughn</u>, 67 F.3d 909, 914 (11th Cir. 1995) (internal quotation omitted). Of course, Petitioner's guilty plea does not waive claims which regard alleged constitutional violations which occurred after the plea was entered. Most notably, plea counsel's failure to file a notice of appeal despite instructions from his client is *per se* ineffective assistance of counsel. <u>See</u> <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000).

Here, many of Petitioner's claims regarding his plea were considered and rejected by the state habeas court. First, relying upon the Supreme Court's decisions in <u>Tollett</u> and <u>Broce</u>, cited above, the state habeas court held that any claims which did not go to the validity of Petitioner's plea had been "waived." Resp't Ex. 4, pp. 3, 7, 12.

Next, relying upon the plea transcript and its own evidentiary hearings, at which Petitioner, his counsel, and various family members testified, the state habeas court made the following findings of fact: (1) Petitioner's retained counsel, Ms. Maureen Floyd, met with him to discuss the case and explained to him the elements of the charges;[6] (2) Ms. Floyd interviewed family members and witnesses; (3) although Petitioner at first protested his innocence, "after counsel obtained and discussed paternity test results with the Petitioner, he admitted that he fathered the child;" (4) Ms. Floyd never made any promises or predictions regarding Petitioner's sentence; (5) although Ms. Floyd hoped Petitioner would receive a lesser sentence, she explained to him that he faced a maximum potential sentence of 20 years of imprisonment; and (6) at the plea hearing, Ms. Floyd informed the court that Petitioner was

---

[6]Of note, "the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." <u>Bradshaw v. Stumpf</u>, 545 U.S. 175, __, 125 S. Ct. 2398, 2405 (2005).

taking Darvocet. Id. at 4-6.

The state habeas court also noted that, at the plea hearing: (1) the court of conviction informed Petitioner of his sentence exposure; (2) the court of conviction informed Petitioner of the rights he was waiving; (3) Petitioner, under oath, acknowledged that he was aware of his rights and his sentencing exposure, but intimated that he still wished to plead guilty; and (4) Petitioner affirmed that no one had threatened him or promised him anything and that his plea was made knowingly and voluntarily. Id. Also of note, the state habeas court specifically credited Ms. Floyd's testimony that Petitioner never expressed any desire to withdraw his guilty plea or to seek leave to file a belated appeal until "ten (10) or eleven (11) months after he entered his plea of guilty." Id. at 11. The state habeas court also noted that, by pleading guilty to reduced charges, Petitioner had significantly lessened his sentence exposure. Id. at 14.

Based upon these factual findings, the state habeas court concluded that Petitioner's plea was knowingly, voluntarily, and intelligently entered, and that his plea was not the product of ineffective assistance of counsel. Id. at 6-8 (citing Boykin v. Alabama, 395 U.S. 238, 242 (1969)) & 13-14 (citing Hill v. Lockhart, 474 U.S. 52, 56, 58-59 (1985)). Petitioner has come forward with no evidence, much less clear and convincing evidence, see 28 U.S.C. § 2254(e)(1), that the state habeas court's factual findings were incorrect. Nor were the state habeas court's conclusions unreasonable in light of the evidence before it. 28 U.S.C. § 2254(d)(2).

Rather, the state habeas court correctly noted that Petitioner's claims are affirmatively contradicted by his own sworn testimony at the plea hearing, which "'constitute[s] a

18

formidable barrier in any subsequent collateral proceedings.'" Resp't Ex. 4, p. 8 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 431 U.S. at 74. At the guilty plea hearing, Petitioner, who responded to the court's questions intelligently and coherently, 1) stated that Ms. Floyd had explained his constitutional rights, 2) acknowledged that he understood his rights as explained to him by the court, 3) explained that he wanted to plead guilty notwithstanding the possibility of a maximum sentence of 20 years of imprisonment, 4) denied being threatened or promised anything in return for pleading guilty, and 5) stated that he was entering his plea "voluntarily and of [his] own will." Resp't Ex. 8, pp. 6-10.

Next, as a factual basis for the plea, the court considered a paternity test and the testimony of the father of the victim (Petitioner's 15-year-old mentally retarded niece). Id. at 11-14. Petitioner also specifically admitted molesting and impregnating his niece and apologized. Id. at 16-17. Furthermore, the record contains Petitioner's signed plea agreement, which also directly contradicts his claims. Resp't Ex. 7, pp. 67-68.

In sum, Petitioner fails to cast any doubt upon the state habeas court's conclusion that his guilty plea was valid, as the state court's findings of fact were based upon overwhelming evidence. Nor has Petitioner shown that any aspect of the state habeas court's decision was contrary to or involved an unreasonable application of federal law. 28 U.S.C. § 2254(d). Indeed, even upon *de novo* review, this Court would agree with the state habeas court's conclusions. Furthermore, because Petitioner was represented by counsel, Petitioner must show that counsel's ineffective assistance affected the outcome of the plea process. Lockhart, 474 U.S. at 59.

Ineffective assistance claims are analyzed under the two-prong test set forth in Strickland v. Washington, (1984). The facts of Strickland, however, are dissimilar from those presented here. Moreover, it cannot be said that the result reached by the state habeas court was contrary to clearly established federal law. Thus, the Court will focus its attention on whether the state habeas court unreasonably applied Strickland to the facts of this case. Bell v. Cone, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, [the petitioner] must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner." Id. (internal citations omitted)).

Under the first prong of the Strickland standard, Petitioner must show that his counsel's performance was deficient in that it fell below an "objective standard of reasonableness" considering all the circumstances at the time of counsel's conduct. See id. at 687-92. Nonetheless, the Court's scrutiny of counsel's performance must be "highly deferential," and the Court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. In this regard, the Court must determine whether counsel's performance was within "the wide range of professionally competent assistance," so as "to make the adversarial testing process work in the particular case." Id. at 690. However, there is a strong presumption that counsel provided "reasonable professional assistance." Id. at 689. For example, decisions concerning which witnesses to interview, as well as which motions to make, are strategic decisions which are entitled to a "heavy measure of deference." Id. at 691.

Under the second prong, the Court must determine whether the deficient performance

actually prejudiced Petitioner's case.  To satisfy the prejudice prong of the test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

In the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Lockhart, 474 U.S. at 59.  In assessing whether a habeas petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas."  Id. at 58.  Therefore, to succeed in his federal habeas corpus challenge to his state court conviction via a guilty plea entered on the advice of counsel, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial.  Id. at 56-59.

Petitioner has outlined absolutely no reason to suppose that Ms. Floyd's performance was deficient or that he would have gone to trial absent attorney error.  Petitioner provides no explanation for his bald and conclusory assertions that his indictment was subject to dismissal, that evidence was obtained from him illegally, or that the paternity test was unreliable or subject to suppression.  Simply put, Petitioner has outlined no meritorious argument or defense which Ms. Floyd failed to press in advising Petitioner to plead guilty.  Nor has Petitioner come forward with any evidence to suggest that counsel coerced him, misled him, or gave him bad advice.  Simply put, Petitioner provides no reason to second-guess the state habeas court's decision to credit Ms. Floyd's sworn assertions that she thoroughly investigated Petitioner's case, discussed the issues with him, went over the plea agreement with him, apprised him of

his rights, explained the elements of the charges, and accurately informed him of his sentence exposure. Resp't Ex. 4, pp. 4-6 (citing Resp't Ex. 7, pp. 16-18, 22, 30-35).

Moreover, Petitioner has not shown that he suffered any prejudice by pleading guilty rather than going to trial. Rather, the record demonstrates that Ms. Floyd's advocacy significantly lowered Petitioner's sentencing exposure. Ms. Floyd convinced the prosecutor that the facts of the case were not indicative of "aggravated" child molestation and secured a deal in which Petitioner could plead guilty to child molestation, the incest charged would be dropped, and the prosecutor would forgo presenting "similar transaction" evidence at sentencing. Resp't Ex. 7, pp. 18, 32. Under these facts, no prejudice has been shown, and Petitioner's claims lack merit. See, e.g., Jones v. White, 992 F.2d 1548, 1557-58 (11th Cir. 1993).

Of course, it is clear that Petitioner is dissatisfied with his sentence. However, Petitioner's displeasure with receiving the maximum sentence for his crime is no basis for habeas relief. A guilty plea is not "a means of testing the weight of the potential sentence." United States v. Gonzalez-Mercado, 808 F.2d 796, 801 (11th Cir. 1987). Also, "a plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal." Bradshaw v. Stumpf, 545 U.S. 175, __, 125 S. Ct. 2398, 2407 (2005). Regardless, there is no indication in the instant case that Petitioner got a bad deal; indeed, quite the opposite is true.

At the end of the day, Petitioner asks the Court to ignore the evidence of record and his own sworn testimony at the guilty plea hearing. This the Court will not do. As Petitioner's plea was voluntary and he received effective assistance of counsel, his remaining claims

regarding the merits of his conviction are immaterial and need not be addressed explicitly. See Jones, 992 F.2d at 1556-57 ("If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea [] will be upheld on federal review." (internal citation and quotation omitted)).

However, the Court must also assess whether Petitioner received ineffective assistance of counsel after he pled guilty. Petitioner maintains that Ms. Floyd ignored his express instructions to file a notice of appeal and a motion to withdraw his guilty plea. The record provides some indication that Petitioner waived his right to appeal. See Resp't Ex 4, p. 4; Resp't Ex. 7, p. 24. Nevertheless, as noted *supra*, plea counsel's failure to file a notice of appeal despite instructions from his client is *per se* ineffective assistance of counsel. Flores-Ortega, 528 U.S. at 477.

The state habeas court credited Ms. Floyd's testimony that Petitioner only began expressing a desire to withdraw his guilty plea and to file an appeal several months after he was convicted and sentenced. As noted, by then the court of conviction no longer had jurisdiction to consider a motion to withdraw guilty plea. Thus, Ms. Floyd was not ineffective for failing to follow Petitioner's belated instructions to withdraw the guilty plea. Furthermore, even if Petitioner had filed a timely motion to withdraw his plea, he had no absolute right to withdraw his plea: "Although a guilty plea may be withdrawn anytime before sentencing, once a sentence has been entered, a guilty plea may only be withdrawn to correct a manifest injustice." Wright v. State, 275 Ga. 497, 498, 570 S.E.2d 280, 281 (2002). Petitioner has not shown that he had any meritorious basis upon which to withdraw his plea.

Next, the time in which to appeal under O.C.G.A. § 5-6-38(a) had also elapsed, and the record provides no basis upon which to conclude that Petitioner was (or is) entitled to an out-of-time appeal. Under Georgia law, Petitioner was not afforded an unqualified appeal as of right. In Georgia, "[w]hen a defendant pleads guilty and then seeks an out-of-time appeal from that plea, he must make the threshold showing that he would have been entitled to file a timely direct appeal from the plea because the issues he is raising can be decided from facts appearing in the record." Brown v. State, 241 Ga. App. 359, 359, 526 S.E.2d 873, 874 (1999); see also Smith v. State, 253 Ga. 169, 169, 316 S.E.2d 757, 758 (1984).

Petitioner's claimed errors center upon allegations of ineffective assistance of counsel; such matters would require an evidentiary hearing and thus could not have been properly resolved via direct appeal. Brown, 241 Ga. App. at 359, 526 S.E.2d at 874. Thus, Petitioner was not entitled to a direct appeal, timely or otherwise, concerning those grounds. Accordingly, Petitioner cannot show that Ms. Floyd was ineffective for failing to seek a belated appeal. Petitioner's decision to appeal, made months after the time in which to appeal expired, did not entitle him to a direct appeal.

Finally, to the extent Petitioner may argue that Ms. Floyd was ineffective for not consulting with him about an appeal before his time ran out, any such claim must fail. Counsel only "has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. There is no indication of either scenario here. Regardless, in order to prevail on this claim, Petitioner must "demonstrate that there is a reasonable probability that, but for

24

counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484. Petitioner has made no such showing.

In sum, Petitioner's contentions are affirmatively contradicted by the record. Consequently, the petition lacks merit and should be denied.

### III. CONCLUSION

Accordingly, the Court **REPORTS** and **RECOMMENDS** that Respondent's motion to dismiss (doc. no. 9) be **DENIED**. Nevertheless, the Court also **REPORTS** and **RECOMMENDS** that the petition be **DENIED** on the merits and that this case be **CLOSED**.

SO REPORTED AND RECOMMENDED this _6th_ day of July, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

25